EDWARD J. SCHUMANN, Petitioner-Appellee, v. M. WARD FLEMING, Respondent (York Township Officers Electoral Board *et al.*, Respondents-Appellants).

Second District   No. 2—93—0163

Opinion filed May 11, 1994.

Burton S. Odelson, Mathias W. Delort, and Keri-Lyn J. Krafthefer, all of Odelson & Sterk, Ltd., of Evergreen Park, for appellants.

Peter A. Felice, of Peter A. Felice & Associates, of Lyons, for appellee.

JUSTICE QUETSCH delivered the opinion of the court:
M. Ward Fleming, objector, raised objections to the nominating petition of Edward J. Schumann, who was seeking election to the office of York Township assessor. Four objections were lodged, and after a hearing, the York Township Officers Electoral Board (Board) sustained one objection, that Schumann would not have been a resident of the township for one year by the time of the election. The circuit court reversed the Board's decision and ordered petitioner's

name to be placed on the ballot. The court determined that the durational residency statute at issue only required Schumann to have been a resident of the township for one year by the time he took office. The Board and its members appeal from the circuit court's order.

In December 1992, Edward J. Schumann filed nomination papers to be a candidate for York Township assessor in the February 23, 1993, primary election. It is undisputed that Schumann moved to York Township in September 1992, just a few months before filing to be a candidate for the office of assessor. Ward Fleming objected *inter alia* on the basis that Schumann had not been a resident of the township for one year. The statute at issue stated, "No person shall be eligible to any town office unless he shall be a legal voter, and have been one year a resident of such town." (60 ILCS 5/9—1 (West 1992).) The Board sustained that objection after reviewing the statutory language and determining that the statute required the candidate to have been a resident for one year by the time of the election. Schumann petitioned the trial court for review, and on February 4, 1993, the circuit court reversed the Board's decision, determining that the language only required that Schumann be a resident for one year by the date he took office, which in this case would not have been until January 1994. The court ordered the Board to direct the Du Page County Board of Election Commissioners to restore Schumann's name to the ballot.

The Board presents two issues on appeal. First, it raises the issue of whether the circuit court erred in determining that the statute requires only that a candidate be a resident for one year before the date he takes office. Obviously, the only construction favorable to Schumann would be that the residence requirement be computed from the date of taking office. Schumann had not resided in the township for one year before he filed a statement of candidacy and would not have been a resident for one year by the time of the election. Second, the Board raises the issue of whether the circuit court had authority to order it to direct the Du Page County Board of Election Commissioners to restore Schumann's name to the ballot. We begin by noting that since this appeal was taken, Schumann's name was restored to the ballot, the election has taken place, and Schumann lost the election. Therefore, we must first determine whether the issues raised are now moot.

A case is "moot" if no actual controversy exists or where because of the happening of certain events the court can no longer grant effectual relief. (*Stephens v. Education Officers Electoral Board, Community College District No. 504* (1992), 236 Ill. App. 3d 159, 161.)

A court may resolve a technically moot issue if it involves an issue of substantial public interest. (*Bonaguro v. County Officers Electoral Board* (1994), 158 Ill. 2d 391, 395.) The public interest exception requires a clear showing that (1) the question is public in nature; (2) an authoritative determination is desirable for the guidance of public officers; and (3) the question is likely to recur. *Bonaguro*, 158 Ill. 2d at 395.

■ We believe that the first issue, whether the durational residency statute requires that a candidate be a resident of the township for one year before he files his nominating petitions, one year before the election, or one year before he takes office, is an important question likely to recur and yet, because of the nature of the action involved, is likely to become moot before the appellate court can review it. Neither the parties nor this court has found a case which squarely addresses the issue presented by this appeal. Under these circumstances, we choose to address the first issue even though our determination will no longer directly affect the controversy which began this action.

The Board premises its construction of the statute on what it terms the "absurd result" that would occur if a candidate did not have to be a resident until one year before taking office. The Board's argument is that if the durational residency requirement did not have to be met until the date a candidate for assessor took office, a person could file nomination petitions and become a candidate before he has even resided in the township for which he was running for office. The Board argues that if a person may become a candidate.at a point when he is not even a resident, then that person could conceivably file for office in several different townships simultaneously, establishing residency only where it seems likely that he could win. Further, the Board contends that section 7—10 of the Election Code (10 ILCS 5/7—10 (West 1992)) requires candidates to submit a sworn statement of candidacy as part of each petition for nomination. The Board argues that the language of that sworn declaration is at odds with any determination that a candidate need not be a resident until he takes office.

Schumann, on the other hand, contends that since section 9—2 of the Township Law of 1874 (Township Law) (60 ILCS 5/9—2 (West 1992)) no longer requires that an assessor take the oath of office within 10 days after election, the legislature has evinced its intent to make compliance with all the qualifications necessary for office concurrent with the taking of office.

We do not find Schumann's argument persuasive. We fail to see how a change in the time for taking the oath of the office of assessor

in any way sheds light on the legislative intent as to the durational residency requirement. The legislature could have amended the durational residency statute to require that a candidate have resided in the township for one year prior to taking office, but it did not do so.

He also argues that since the Revenue Act of 1939 (35 ILCS 205/1 *et seq.* (West 1992)) addresses certain election procedures for assessors, only the requirements of the Revenue Act of 1939 apply and the durational residency requirement in the Township Law does not apply to those seeking the office of assessor. Again, we do not agree. Unlike in *People ex rel. Romano v. Krantz* (1958), 13 Ill. 2d 363, 367-68, where the court held that "An Act to revise the law in relation to township organization" (Act) (Ill. Rev. Stat. 1955, ch. 139, par. 83) did not apply to justices of the peace as evidenced by the fact that the legislature had gone to great lengths to remove them from the category of town officers under the Act, here the Township Law is replete with references to assessors. It is clear that provisions of both apply to the election of a township assessor.

We find equally unavailing other support offered by Schumann for his position that he need be a resident for one year only prior to taking office. He points to language in the Illinois Municipal Code which provides that certain officers must reside in the municipality for a certain period of time prior to election to argue that the lack of similar language in the Township Law means that the length of residency is determined from the date of taking office. (65 ILCS 5/3—5—5, 3—14—1 (West 1992).) We recognize that the legislature could more clearly have stated its intention that the assessor be a resident for one year preceding candidacy or the election, but the negative inference that runs from this omission runs just as strongly from its failure to state unequivocally that the residency requirement is to be computed from the date the candidate takes office.

We note that Schumann has made a weak argument that since section 3—14—1 of the Illinois Municipal Code (65 ILCS 5/3—14—1 (West 1992)) states that the one-year residency requirement for municipal office does not apply to officers who require technical training or knowledge, assessors may be exempt from the residency requirement because they must have technical training. However, the one-year residency requirement of the Municipal Code has no applicability to township assessors in the first place since the Municipal Code specifically provides that "municipal" or "municipality" does not ordinarily include a township. (65 ILCS 5/1—1—2 (West 1992).) The applicable one-year residency requirement under the Township Law does not have a similar exception for technical officers.

■ We turn now to the language of the statute at issue to make a

determination of the date from which the durational residency requirement must be computed. The language of a statute should be given its plain and ordinary meaning. (*McGuire v. Nogaj* (1986), 146 Ill. App. 3d 280, 283.) The plain and ordinary meaning is considered the best indicator of the intent of the legislature. (*McGuire*, 146 Ill. App. 3d at 283.) In this case, the statute provides that "[n]o person shall be eligible to any town office unless he shall be a legal voter, and have been one year a resident of such town." (60 ILCS 5/9—1 (West 1992).) "[E]ligible" is defined in the dictionary as "fitted or qualified to be chosen or used." (Webster's Third New International Dictionary 736 (1986).) Thus, substituting the word "qualified" into the statute, it provides that to be qualified for town office the person must have been a resident for one year. We note that the candidate must file a statement of candidacy in his petition for nomination that states that he is "legally qualified *** to hold such office." (10 ILCS 5/7—10 (West 1992).) We also note that while part of the requirements for the statement of candidacy allows the candidate to swear that he has filed or will file a statement of economic interests, the section requiring a statement that he is qualified is phrased in the present tense only. In other words, at the time that the candidate obtains the necessary petitions for nomination, he must swear that he *is* (*not "will be"*) qualified to hold office. To be "qualified" or "eligible" to hold office he must have been a resident of the township for one year. It is often necessary in construing a statute to consider provisions of other statutes relating to the same subject for the purpose of determining legislative intent. (*Village of South Elgin v. City of Elgin* (1990), 203 Ill. App. 3d 364, 369.) It seems obvious that reading these two statutes together the candidate must have satisfied the durational residency requirement by the time he completes his statement of candidacy.

In light of our interpretation of the statute in this manner, we must address one final argument by Schumann. He contends that the statute is so vague as to not give notice of what is necessary to become a candidate. He asserts that a construction of the statute in its most limiting way, that is, that the durational residency requirement must be satisfied before a person may become a candidate, offends due process. We do not agree. The language of the statute mandates that in order to be eligible or qualified for office, the candidate must have resided in the township for one year. We do not believe the language is so vague as to surprise Schumann unfairly and violate his right to procedural due process. (*Stephens*, 236 Ill. App. 3d at 164.) Moreover, while the Illinois Supreme Court has never issued a holding as to the meaning of the statute at issue here (60 ILCS 5/9—1

(West 1992)), in *Anderson v. Schneider* (1977), 67 Ill. 2d 165, 169, this statute was involved and the court recognized that the statute required a candidate to have met the requirement of one year's residency. Thus, Schumann cannot legitimately argue that he had no reason to believe a court would construe the language of the statute in this manner.

The circuit court in this case interpreted the statute to promote liberal ballot access. Access to a place on the ballot is a substantial right not lightly to be denied. (*Welch v. Johnson* (1992), 147 Ill. 2d 40, 56.) However, promoting liberal ballot access only requires that all doubts be resolved in favor of a candidate's eligibility. (*McGuire*, 146 Ill. App. 3d at 282.) Here, the statute requires one year of residence in the township for a person to be a candidate. Restrictions on ballot access are designed to protect the integrity of the electoral process (*Welch*, 147 Ill. 2d at 56) and cannot be ignored. We believe that we have struck the proper balance of maintaining the integrity of the electoral process while not unnecessarily restricting ballot access by interpreting the plain language of the statute to mean that to be a candidate, the person must have met the one-year residency requirement.

We do not address the second issue raised by the Board because we do not find it an issue likely to recur. The Board admits that, under local rules, persons appealing from a Board decision must name the Du Page County Board of Election Commissioners as a party. Thus, the circumstance where the Du Page County Board of Election Commissioners would not appear and the court would order the Board to direct the Du Page County Board of Election Commissioners to do something is not likely to arise. Accordingly, we will not address the issue as it is moot.

For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County.

Reversed.

INGLIS, P.J., and DOYLE, J., concur.