# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People ex rel. Madigan v. Bertrand*, 2012 IL App (1st) 111419

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of Illinois, Plaintiff and Intervenor-Appellee, v. JOSEPH G. BERTRAND, JR., in His Individual Capacity, Defendant-Appellant (The Board of Education of Bremen Community High School District 228; The Board of Education of Forest Ridge School District 142, and Kurt Staehlin, Plaintiffs-Appellees; Joseph G. Bertrand, Jr., in His Official Capacity as President of the Board of Trustees of Bremen Township Trustees of Schools Township 36N, Range 13E; Julienne Mallory, Individually and in Her Official Capacity as Trustee of the Board of Trustees of Bremen Township Trustees of Schools Township 36N, Range 13E; The Board of Trustees of Bremen Township Trustees of School Township 36N, Range 13E; and Joseph McDonnell, Individually and in His Official Capacity as Treasurer of the Board of Trustees of Bremen Township Trustees of Schools Township 36N, Range 13E, Defendants). |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1419 |
| Filed | September 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The settlement agreement defendant entered into with plaintiff board of education in connection with defendant's action seeking an order requiring plaintiffs to honor his election to a seat on the board was void under section 3(a) of the Public Officer Prohibited Activities Act and on the ground that the agreement was never properly approved. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-27682; the Hon. Michael B. Hyman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Anthony G. Scariano, James A. Petrungaro, and Jacqueline M. Litra, all of Scariano, Himes & Petrarca, Chtrd., of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellee People *ex rel.* Madigan. |
| | William F. Gleason, Christopher L. Petrarca, and Raymond A. Hauser, all of Sraga Hauser, LLC, of Flossmoor, for other appellees. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Lampkin and Justice Garcia concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant-appellant Joseph G. Bertrand, Jr., individually, appeals from a circuit court judgment on the pleadings which determined that a monetary settlement agreement he entered into with the Board of Trustees of Bremen Township Trustees of Schools Township 36 North, Range 13 East (the Board) was void because it was not properly approved by the Board and because Bertrand, as an elected trustee of the Board, acted under a conflict of interest as defined and prohibited by section 3(a) of the Public Officer Prohibited Activities Act (Act) (50 ILCS 105/3(a) (West 2010)),[1] when he participated in the negotiations of the settlement agreement in which he had a financial interest.

¶ 2    The current language in section 3(a) of the Act provides in relevant part that "[n]o person holding any office, either by election or appointment under the laws or Constitution of this

_____

[1]Formerly, the Public Officer Prohibited Activities Act was commonly known as the Corrupt Practices Act (Ill. Rev. Stat. 1987, ch. 102, ¶ 3(a)). We will refer interchangeably to cases interpreting both statutes.

State, may be in any manner financially interested directly *** or indirectly ***, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. *** Any contract made and procured in violation hereof is void." 50 ILCS 105/3(a) (West 2010) ; see also 9 Ill. L. and Prac., *Cities, Villages, and Other Municipal Corporations* § 439 (2012).

¶ 3    Section 3(a) of the Act is a conflict-of-interest provision designed to deter public officials from placing themselves in positions where their private pecuniary interests conflict or may conflict with their official public duties. See, *e.g.*, *People v. Savaiano*, 66 Ill. 2d 7, 15 (1976) (stating that one of the purposes of this provision is to deter public officials from allowing themselves to be placed in situations where they may be called upon to act or vote in the making of a contract in which they have an interest; the evil exists because the official is able to influence the process of forming the contract); *Brown v. Kirk*, 33 Ill. App. 3d 477, 483 (1975) (stating that the purpose of this section of the Act is to deter public officers from participating in official decisions that would benefit them financially to the prejudice of those whom they serve), *rev'd on other grounds*, 64 Ill. 2d 144 (1976); *Shoresman v. Burgess*, 412 F. Supp. 831, 837-38 (E.D. Ill. 1976) (interpreting this section of the Act as fairly informing public officials of their duty to avoid becoming interested, either directly or indirectly in contracts which may inure to their personal benefit).

¶ 4    We provide a brief background of the parties and the facts giving rise to this appeal. The Board is a body politic and corporate, consisting of three duly elected trustees authorized to exercise those powers and duties described in article 5 of the Illinois School Code (School Code) (105 ILCS 5/5-1 *et seq.* (West 1998)). During the relevant time period, the three elected trustees were Bertrand, Ms. Julienne W. Mallory, and Mr. Michael T. Duggan.

¶ 5    Mr. Joseph J. McDonnell is the Board treasurer. Plaintiffs-appellees the Board of Education of Bremen Community High School District 228 and the Board of Education of Forest Ridge School District 142, are two publicly elected boards of education subject to the jurisdiction of the Board. Plaintiff-appellee Mr. Kurt Staehlin is a taxpayer residing in Oak Forest, Illinois.

¶ 6    On April 17, 2007, Bertrand successfully ran in an election for a seat as a trustee on the Board, defeating the incumbent. Bertrand was certified by the Cook County elections clerk as the victor. The Board, however, refused to seat Bertrand, claiming that he was ineligible for the seat because he resided in the same elementary school district as Ms. Mallory.

¶ 7    Bertrand filed suit against the Board and other defendants in the circuit court of Cook County seeking a declaratory judgment ordering the Board to honor the certified election results and seat him as a trustee. Bertrand also sought to recover damages and attorneys fees under claims of civil rights violations pursuant to the Civil Rights Act of 1991 (42 U.S.C. §§ 1983, 1988 (2006)) and for damages related to an alleged civil conspiracy to deprive him of his trustee seat.

¶ 8    Bertrand prevailed on his claim to be seated as a trustee on the Board, but his claims for damages and fees were dismissed by the circuit court. The final pending count for alleged civil conspiracy was dismissed without prejudice on May 20, 2010.

¶ 9    On June 7, 2010, the Board held a meeting. The only trustees present at the meeting were

Bertrand and Ms. Mallory. Also in attendance were Bertrand's attorney, the Board's attorneys (via teleconference), and treasurer Mr. McDonnell and his attorney. During the meeting, the Board went into an executive session to discuss a proposed settlement of the lawsuit involving Bertrand.

¶ 10    At the conclusion of the executive session and upon reconvening the open portion of the meeting, Ms. Mallory moved for the Board to award Bertrand the sum agreed upon in the executive session ($220,000, in two installments, jointly payable to Bertrand and his attorney) in return for his full release of all claims in the lawsuit. Bertrand seconded the motion and the matter was put to a vote. Ms. Mallory voted in favor of the motion while Bertrand abstained from voting. Based upon this vote, Ms. Mallory directed the Board's legal counsel to prepare a settlement agreement between the Board and Bertrand.

¶ 11    On June 14, 2010, the circuit court entered a final order dismissing all of Bertrand's claims against the Board and other defendants.

¶ 12    On June 22, 2010, the Board held a special meeting where several members of the public expressed dissatisfaction with the proposed settlement agreement. One of the Board's attorneys maintained that the Board had improperly approved the settlement agreement. Ms. Mallory stated that she believed it was wrong for the outgoing members of the Board to refuse to seat Bertrand and that he was entitled to his attorney fees for his lawsuit.

¶ 13    Ms. Mallory moved to approve the settlement agreement. Bertrand seconded the motion and the matter was put to a vote. Ms. Mallory voted in favor of the motion, Mr. Duggan voted against the motion, and Bertrand abstained from voting. Based upon this vote, Bertrand declared that the motion had passed. The settlement agreement and a release was subsequently executed on June 25, 2010.

¶ 14    On June 28, 2010, the plaintiffs-appellees filed a seven-count verified complaint against Bertrand, the Board, and Ms. Mallory seeking a declaration that the settlement agreement was void. An amended verified complaint was filed the next day. The Attorney General of the State of Illinois intervened as a plaintiff on behalf of the People.[2]

¶ 15    On April 18, 2011, the circuit court entered a memorandum opinion and order granting plaintiffs' motion for a judgment on the pleadings, finding that the settlement agreement was void because it was not properly approved by the Board and because it was procured in violation of section 3(a) of the Act. The circuit court also granted the plaintiffs' motion to strike the affirmative defense of immunity raised by Bertrand under section 15 of the Citizen Participation Act (735 ILCS 110/15 (West 2008)). Bertrand appeals to this court. For the reasons that follow, we affirm.

¶ 16                                    ANALYSIS

¶ 17    This case involves a judgment on the pleadings in plaintiffs' favor. A motion for a judgment on the pleadings is similar to a motion for summary judgment. *Pekin Insurance Co.*

_____

[2]Plaintiffs-appellees and the intervening Attorney General will hereafter be referred to as plaintiffs.

*v. Wilson*, 237 Ill. 2d 446, 455 (2010). Judgment on the pleadings is proper where the pleadings disclose no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005).

¶ 18 In ruling on such a motion, only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered. *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001). All well-pleaded facts and all reasonable inferences from those facts are taken as true. *Id.* Our review is *de novo*. *Id.*

¶ 19 In this appeal, Bertrand raises a number of arguments as to why he believes the circuit court erred in finding that the settlement agreement was void for being in violation of section 3(a) of the Act. We find no merit in any of these arguments.

¶ 20 Bertrand's arguments regarding section 3(a) of the Act turn on statutory construction. Issues of statutory construction are questions of law, which we review *de novo*. *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455 (1990). The best evidence of this intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Krautsack*, 223 Ill. 2d at 553.

¶ 21 Because all provisions of a statutory enactment are viewed as a whole, words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). Accordingly, in determining the intent of the legislature, the court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *Id.*

¶ 22 Bertrand contends that the circuit court erred in finding that the settlement agreement was void under section 3(a) of the Act, because the court improperly determined that the settlement agreement was a "contract" subject to section 3(a). He acknowledges that the settlement agreement is a contract under the common law, but maintains that it is not a contract within the meaning of section 3(a) of the Act, because it was not a business-type transaction but rather a means of disposition of litigation. Bertrand relies on the reasoning in *People v. Scharlau*, 141 Ill. 2d 180 (1990), for this proposition.

¶ 23 In *Scharlau*, our supreme court addressed the issue of whether a consent decree constituted a "contract" subject to section 3(a) of the Act. The facts in *Scharlau* revealed that a group of black residents from the city of Danville, Illinois, filed a federal lawsuit against the city and its elected commissioners, who were nearing the end of their four-year terms, alleging that the city's process for electing commission members excluded African-American representation and diluted minority voting strength in violation of the Voting Rights Act of 1965 (42 U.S.C. § 1973b (1982 & Supp. V 1987)). In an attempt to settle the lawsuit, the parties filed a stipulation for a consent decree. As part of the consent decree, the commissioners created temporary administrative positions for themselves that would continue their employment for at least three years after the general election. *Scharlau*, 141 Ill. 2d at 185-86.

¶ 24    The federal district court initially entered a consent decree incorporating the stipulation's language, but then later vacated the order and held hearings on the proposed settlement agreement. *Id.* at 185. Several parties, including the Vermilion County State's Attorney, filed motions to intervene, arguing that the negotiation process used by the defendants to procure the consent decree violated certain state conflict-of-interest statutes, including section 3(a) of the Act. *Id.* at 186-88. The federal district court ultimately determined that the negotiation process did not violate Illinois law and it entered the consent decree. *Id.* at 186.

¶ 25    Shortly after the consent decree was entered, the defendants stood trial in the circuit court of Vermilion County on charges of violating state conflict-of-interest statutes, including section 3(a) of the Act. The circuit court found all defendants guilty. *Id.* at 187-88. The appellate court reversed the circuit court, finding, among other things, that section 3(a) of the Act was inherently ambiguous because it did not define the term "contract." *People v. Scharlau*, 193 Ill. App. 3d 280, 292 (1990).

¶ 26    Our supreme court reversed the appellate court and affirmed the judgment of the circuit court. *Scharlau*, 141 Ill. 2d at 204. In affirming the judgment of the circuit court, the supreme court determined that the appellate court had violated a basic principle of statutory construction, the plain-meaning rule, when it focused on too narrow a portion of the statute in attempting to define the term "contract." *Scharlau*, 141 Ill. 2d at 193. The court stated that a consent decree cannot be characterized as a court order, but must be interpreted as if it were an independent contractual agreement, controlled by the law of contracts. The court determined that the consent decree at issue constituted a contract for purposes of section 3(a) of the Act, because it consisted of a covenant not to sue in exchange for a promise of employment. *Id.* at 195-96.

¶ 27    The court further explained that the context in which the term "contract" is used appears to imply traditional business-type transactions, but that the plain meaning of the term extends to a myriad of situations. *Id.* at 194. Therefore, in *Scharlau*, the court's analysis of the term "contract" did not limit the definition to business-type transactions as Bertrand suggests. Moreover, the contractual language employed in the consent decree reviewed in *Scharlau* is similar to the language used in the settlement agreement in this case, where the consent decree consisted of a covenant not to sue in exchange for employment and the settlement agreement consisted of a covenant not to pursue an appeal in exchange for money. The settlement agreement created an obligation on the part of the Board to pay $220,000 in public funds to Bertrand and his attorney.

¶ 28    Bertrand next argues that the settlement agreement is not a contract under section 3(a) of the Act because he had a significant chance of succeeding on his section 1983 claim on appeal, which would have included an award of attorney fees under section 1988. This argument is flawed because even assuming Bertrand had succeeded in his appeal and been awarded attorney fees, it does not follow that the settlement agreement is not a contract for purposes of section 3(a) of the Act. Bertrand's chances of success in the underlying appeal are irrelevant in assessing a violation under section 3(a) of the Act.

¶ 29    Bertrand next contends that the settlement agreement is not a contract under section 3(a) of the Act because unlike *Scharlau*, the underlying action could not have been settled without

him, reasoning that the commissioners in *Scharlau* were ancillary to the settlement agreement between the voting rights plaintiffs and the city of Danville, and they were not necessary parties to the settlement agreement as was he. Bertrand argues that unlike the commissioners in *Scharlau*, the underlying case could not have been settled without him being a party to the settlement agreement. Bertrand is incorrect. The commissioners in *Scharlau* were individually named parties to the lawsuit and, as such, their consent was required in order for the settlement and consent decree to be valid.

¶ 30    Moreover, Bertrand, much like the commissioners in *Scharlau*, was not required to obtain a financial interest through the terms of the settlement agreement. He had already prevailed on his claim to be seated as a trustee on the Board. Nevertheless, he chose to pursue and receive a financial interest in the settlement agreement despite the language of section 3(a) of the Act.

¶ 31    Bertrand next contends that unlike the commissioners in *Scharlau*, he did not actively participate in negotiation of the settlement agreement. Bertrand claims that he attended the closed portion of the Board meeting on June 7, 2010, in his capacity as a litigant and not as a trustee. He further claims that he did not vote on the settlement measure as a trustee, but instead, intentionally abstained from voting. None of these claims are persuasive.

¶ 32    The only trustees present at the meeting on June 7, 2010, were Bertrand and Ms. Mallory. Bertrand was present at the meeting as the president of the Board. Pursuant to section 5-16 of the School Code, "[t]wo members shall constitute a quorum for the transaction of business." 105 ILCS 5/5-16 (West 1998). Therefore, absent Bertrand's presence there would not have been a quorum to conduct business and the meeting would have been in violation of section 5-16 of the School Code. Bertrand's position is further undercut by the fact that he seconded the motion to approve the settlement agreement on two separate occasions and then declared it passed.

¶ 33    When Bertrand decided to actively participate in the negotiation of a financial settlement agreement between himself and the public body he represented, his personal pecuniary interests inevitably came into conflict with his duty not to use his elected office for personal financial gain. Conflict-of-interest statutes such as section 3(a) of the Act were enacted to "discourage this type of ethical dilemma and the abuses that stem from it." *Scharlau*, 141 Ill. 2d at 200.

¶ 34    Bertrand next contends that Illinois public policy favors settlement agreements as a means of avoiding the time and costs associated with litigation and therefore, the circuit court's application of section 3(a) of the Act to invalidate the settlement agreement at issue in this case contravenes that public policy. We must disagree.

¶ 35    Public policy is to be found in the state's constitution and statutes and, when they are silent, in its judicial decisions. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 129 (1981). The public policy of the State of Illinois is expressed in the plain and clear language of section 3(a) of the Act.

¶ 36    Any considerations of public policy are superfluous when the statutory language is clear. *Hadley v. Department of Corrections*, 362 Ill. App. 3d 680, 687 (2005). "An inquiry into public policy in an attempt to construe a statute is unnecessary where the statutory language

is clear and unambiguous. [Citation.] Where, as here, the language of a statute is clear and unambiguous, there is no occasion for judicial construction; the only proper function of a court is to enforce the law as enacted by the legislature according to the plain meaning of the words used." *Golladay v. Allied American Insurance Co.*, 271 Ill. App. 3d 465, 469 (1995).

¶ 37    In sum, we find that the circuit court correctly found that the settlement agreement was void under section 3(a) of the Act. In the analysis that follows, we also find that the circuit court correctly determined that the settlement agreement was void because it was never properly approved by the Board at the meeting of June 7, 2010. In the circuit court below, Bertrand conceded that the Board's actions on June 22, 2010, violated the Illinois Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2008)), and therefore, like the circuit court, we only address the validity of the Board's actions at the meeting on June 7, 2010.

¶ 38    As previously mentioned, the Board consists of three duly elected trustees, authorized to exercise those powers and duties as described in article 5 of the School Code (105 ILCS 5/5-1 *et seq.* (West 1998)). Two members are required to be present at a meeting in order to constitute a quorum (105 ILCS 5/5-16 (West 1998)), where a quorum has been defined as the number of members necessary for a decision-making body to be legally competent to transact business. *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 367 (2005).

¶ 39    However, article 5 of the School Code does not set forth the number of votes required for the Board to take binding and proper action. Where a statute is silent as to the number of votes necessary in order to approve a measure, the requirement is dictated by common law. *Village of Oak Park*, 362 Ill. App. 3d at 367-68. The common law rule is that where a quorum is present, a vote of the majority of those present is sufficient for a valid action. *Id.* A majority means the number greater than half of any total. *County of Kankakee v. Anthony*, 304 Ill. App. 3d 1040, 1047 (1999).

¶ 40    A review of the record reveals that the settlement agreement was not properly approved by the Board at the meeting on June 7, 2010, because although there was a quorum of two present at the meeting–Ms. Malloy and Bertrand–only Ms. Malloy voted in favor of the settlement agreement, while Bertrand abstained from voting. One vote out of a quorum of two individuals does not constitute a majority. The proposed settlement agreement was therefore void for lack of a valid majority vote.

¶ 41    We reject Bertrand's contention that his vote to abstain, counted as a "yea" vote under the *Prosser* rule. In *Prosser v. Village of Fox Lake*, 91 Ill. 2d 389, 394 (1982), our supreme court concluded that in order to prevent frustration or abuse of the legislative process, a legal significance or effect must be given to each failure to vote by a municipal legislature who is present at a board meeting.

¶ 42    The *Prosser* rule established that when the "concurrence" of the majority is required for passage, a vote of "pass," "present," or "abstain," or a failure to vote when present, constitutes the acquiescence or concurrence with the majority who did vote; and when the "affirmative" vote of the majority is required, then only an actual "yea" or "aye" vote will be counted toward passage and any attempt to vote to "abstain" or to vote in any manner other than "yea" or "nay," or a failure to vote, will be considered to have the effect of a "nay"

vote. *Prosser*, 91 Ill. 2d at 395.

¶ 43    In this case, Bertrand had a financial interest in the proposed settlement agreement before the Board on June 7, 2010, and under section 3(a) of the Act, he was required to abstain. To construe such an abstention as a "yea" vote under these circumstances would create an end-run around the statute, allowing public officials to cast affirmative votes for contracts in which they had an interest by voting to abstain. This would be contrary to the legislative intent behind the statute. Bertrand's vote to abstain must be interpreted as having the same effect as a "nay" vote.

¶ 44    Bertrand finally contends that the Citizen Participation Act provided him with immunity and precluded the circuit court from invalidating the settlement agreement. Again, we must disagree.

¶ 45    The Citizen Participation Act was enacted to discourage lawsuits against individuals based on their participation in government or more specifically to discourage so-called "strategic lawsuits against public participation" or "SLAPPs." See generally *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 630-33 (2010). SLAPPs are described as "civil actions brought to discourage citizens from exercising a constitutional right to petition, speak freely, associate freely, or otherwise participate in or communicate with government in opposition to the interests of the plaintiff." Eric M. Madiar & Terrence J. Sheahan, *Illinois' New Anti-SLAPP Statute*, 96 Ill. B.J. 620, 620 (2008).

¶ 46    "SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation." *Wright Development Group, LLC*, 238 Ill. 2d at 630. The Citizen Participation Act attempts to provide citizens with legal immunity from SLAPPs. Section 15 of the Citizen Participation Act immunizes from liability all "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government," except if those acts were "not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2008).

¶ 47    Bertrand's conduct in accepting an unauthorized payment of public funds pursuant to the settlement agreement at issue in this case does not qualify for protection under the Citizen Participation Act because his conduct was obviously not in furtherance of his constitutional rights to petition, speech, association, or participation in government. And more importantly, the Citizen Participation Act seeks to "protect and encourage public participation in government to the maximum extent permitted by law." 735 ILCS 110/5 (West 2008). The Citizen Participation Act's text and purpose does not support a claimed right of a public official to be paid public funds in express violation of a statute or without the proper authorization of the disbursing body.

¶ 48    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 49    Affirmed.