2025 IL App (2d) 250017
No. 2-25-0017
Opinion filed February 18, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| MARK STRICKLIN, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
|     Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-MR-516 |
| | ) | |
| THE ELECTORAL BOARD OF THE | ) | |
| TOWNSHIP OF WAUKEGAN; | ) | |
| PERCY L. JOHNSON, as Member of the | ) | |
| Electoral Board of the Township of Waukegan; | ) | |
| MARC L. JONES, Chair of the Electoral Board | ) | |
| of the Township of Waukegan; ROSE | ) | |
| STABEN, as Member of the Electoral Board | ) | |
| of the Township of Waukegan and in Her | ) | |
| Official Capacity as Township Clerk; | ) | |
| ANTHONY VEGA, in His Official Capacity | ) | |
| as Lake County Clerk, and RITA MAYFIELD, | ) | |
| Candidate, | ) | |
| | ) | |
|     Respondents | ) | Honorable |
| | ) | Joseph V. Salvi, |
| (Rita Mayfield, Respondent-Appellant). | ) | Judge, Presiding. |

_____

        JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
        Justices McLaren and Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    In this case, we are asked to decide the date from which the durational residency requirement in section 55-5 of the Township Code (60 ILCS 1/55-5 (West 2022)) must be computed. For the following reasons, we conclude that a candidate must have resided in the

township at the time he or she executed his or her statement of candidacy. We reverse the determination by the Waukegan Township Officers Electoral Board (Board) that the proper reference date is the time of execution of the oath of office.

¶ 2                                I. BACKGROUND

¶ 3      On October 20, 2024, respondent Rita Mayfield executed, as part of her nominating papers, her statement of candidacy, seeking the Democratic Party's nomination for township assessor in Waukegan Township in the consolidated primary election to be held on February 25, 2025. In her sworn statement, she listed her address as 770 Walnut Street in Waukegan. Mayfield also swore that "I am legally qualified *to hold* such office." (Emphasis added.) 10 ILCS 5/10-5 (West 2022) (forms of petitions for nomination).

¶ 4      Previously, on November 25, 2023, Mayfield filed her statement of candidacy, seeking the Democratic Party's nomination for the office of representative in the General Assembly for the 60th Representative District. In her statement, she swore that her address was 229 Suda Drive in Gurnee and that "I am legally qualified *** *to hold* such office." (Emphasis added.) *Id.* § 7-10 (form of petition for nomination). Mayfield was reelected as representative for the 60th Representative District in the November 5, 2024, General Election.

¶ 5      On November 1, 2024, petitioner, Mark Stricklin, the incumbent Waukegan Township assessor, filed an objector's petition to Mayfield's township assessor nominating papers, alleging that, because Mayfield submitted a statement of candidacy for representative on November 25, 2023, that listed her address as within Gurnee (which is not in Waukegan Township), she could not have resided within Waukegan Township for more than one year prior to October 20, 2024, when she signed her township assessor statement of candidacy. Relying on section 55-5 of the Township Code, which provides that "[n]o person is eligible to hold any office unless he or she

\*\*\* has been a resident of the township for one year" (60 ILCS 1/55-5 (West 2022)) and *Schumann v. Fleming*, 261 Ill. App. 3d 1062 (1994), Stricklin maintained that Mayfield needed to reside within Waukegan Township since no later than October 20, 2023—one year preceding the date upon which she signed her statement of candidacy for township assessor.[1]

¶ 6    Mayfield moved to dismiss Stricklin's petition, arguing that the one-year durational residency requirement is *not* measured from the date upon which a candidate signs his or her statement of candidacy and that *Schumann* interpreted another statute that imposed different residency requirements. She took the position that she must satisfy the durational residency requirement upon executing the oath of office.

¶ 7    After a hearing, the Board, on November 20, 2024, granted Mayfield's motion to dismiss Stricklin's objector's petition. Stricklin petitioned for judicial review (10 ILCS 5/10-10.1 (West 2022)), seeking reversal of the Board's decision and an order that Mayfield's name not be printed on the February 25, 2025, ballot. On January 8, 2025, the circuit court granted Stricklin's petition for judicial review and ordered that Mayfield's name not be printed on the ballot. It also stayed its order pending appeal and set the matter for status on January 30, 2025. Mayfield appeals.

¶ 8                                II. ANALYSIS

¶ 9    Mayfield argues that the circuit court's decision was erroneous and that we should affirm the Board's decision and order that her name be placed on the February 25, 2025, ballot.

¶ 10    A challenge in the circuit court to an electoral board's decision is "in the nature of administrative review." *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015

---

[1]Stricklin did not assert that Mayfield does not currently reside in Waukegan Township, nor did he assert that she did not live there when she submitted her nomination papers or when he filed his objector's petition.

IL 118929, ¶ 19. Accordingly, this court reviews the electoral board's decision, not the circuit court's decision. *Id.* Issues of statutory construction are questions of law. *People ex rel. Madigan v. Bertrand*, 2012 IL App (1st) 111419, ¶ 20. We review *de novo* agency rulings on legal questions. *Sbarra-Hagee v. Lake County Electoral Board*, 2022 IL App (2d) 220193, ¶ 11.

¶ 11    The cardinal principle and primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. *Roberts v. Alexandria Transportation, Inc.*, 2021 IL 126249, ¶ 29. The best indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning. *In re Hernandez,* 2020 IL 124661, ¶ 18. Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003). Only if the statutory language is ambiguous may we look to other sources to ascertain the legislature's intent. *Id.* A statute is ambiguous when it is capable of being understood by reasonably well-informed people in more than one sense. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 24. A court presumes that the legislature intended that two or more statutes that relate to the same subject are to be read harmoniously so that no provisions are rendered inoperative. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 391-92 (1998).

¶ 12    Mayfield argues that Stricklin's reliance on *Schumann*, which the Board implicitly rejected, is misplaced because the case interpreted a statute that has been repealed and because the current statute supports her arguments. In *Schumann*, an objector challenged the nominating papers of the plaintiff, who sought election to the office of York Township assessor. The objector argued that the plaintiff would not have been a resident of the township for one year by the time of the election. The relevant statute, section 9-1 of the Township Law of 1874, provided that "[n]o person shall be *eligible to* any town office unless he shall *** have been one year a resident of such town."

(Emphasis added.) 60 ILCS 5/9-1 (West 1992). The board sustained the objection, determining that the statute required the plaintiff to have been a township resident for one year by the time of the election. The circuit court reversed this decision, finding that the language required only that the plaintiff be a resident for one year by the date he took office. On appeal, the court reversed the circuit court, holding that the statute required that the plaintiff satisfy the durational residency requirement by the time he completed his statement of candidacy. *Schumann*, 261 Ill. App. 3d at 1066-67. Addressing the statute, the *Schumann* court noted that the term "eligible" means " 'fitted or qualified to be chosen or used.' " *Id.* at 1066 (quoting Webster's Third New International Dictionary 736 (1986)). Substituting "qualified" into the statute, the court determined that, to be qualified for town office, the person must have been a resident for one year. *Id.* The statement of candidacy that must be filed in a petition for nomination, the court further noted, requires a candidate to swear that he is " 'legally qualified *** to hold such office.' " *Id.* (quoting 10 ILCS 5/7-10 (West 1992)). As the statement was in the present tense, a candidate was required to swear that "he *is* (*not 'will be'*) qualified to hold office. To be 'qualified' or 'eligible' to hold office[,] he must have been a resident of the township for one year." (Emphases in original.) *Id.* Reading the statutes together, the court concluded that "the candidate must have satisfied the durational residency requirement by the time he completes his statement of candidacy." *Id.*

¶ 13    Months before *Schumann* was decided, section 9-1 was repealed. Pub. Act 88-62 (eff. Jan. 1, 1994). Currently, section 55-5 of the Township Code provides that "[n]o person is *eligible to hold* any office unless he or she *** has been a resident of the township for one year." (Emphasis added.) 60 ILCS 1/55-5 (West 2022). Thus, the statute was revised from reading "eligible to any town office" to "eligible to hold any office."

¶ 14     Mayfield argues that the legislature's addition of the words "to hold" adds a clear statement concerning when to measure the one-year residency period. In this context, she asserts, the word "hold" means "[t]o possess in virtue of a lawful title" (The Law Dictionary, https://thelawdictionary.org/hold/ (last visited Feb. 12, 2025) [https://perma.cc/G5FH-WJ43]). Mayfield contends that a person cannot "hold" a public office until they he or she takes the oath of office. 60 ILCS 1/55-10 (West 2022) ("[e]very person elected *** to the office of *** assessor ***, before entering upon the duties of that office, shall take and subscribe *** the oath or affirmation of office"). The present statute, she argues, provides that a person may not hold (*i.e.*, possess) the office until taking the oath of office, which is when the person must meet the eligibility requirements. The statute, in her view, no longer requires that a person must meet the eligibility requirements to *seek* the office. If the legislature had intended to make the eligibility requirements applicable to the ability to "seek" office, Mayfield argues, it would have done so or, at the very least, left the statute unchanged.

¶ 15     Mayfield further notes that the amendment of a statute reflects a legislative intent to change the law. See, *e.g.*, *In re K.C.*, 186 Ill. 2d 542, 549 (1999) ("[w]here the legislature amends an existing statute, the presumption is that the legislature intended a material change in the law"). Under the former statute, a person must have resided in the township for one year to be eligible to "seek" the office (by filing nomination papers). Under the current law, Mayfield argues, a person must reside in the township to be eligible to "hold" the office (which one cannot do until taking the oath of office). Today, she contends, she does not "hold" the office; she "seeks" it. For Stricklin to prevail, she argues, the words "to hold" must be rendered meaningless; if the legislature had intended for the statute to have the same meaning as it did before the amendment, it would not have changed the wording.

¶ 16    Mayfield also argues that the result she advances is not absurd and disagrees with Stricklin's assertion below that, if her interpretation prevailed, no one could ever challenge the residency of a township assessor. She notes that, if she or Stricklin were to be elected, they would be subject to removal from office through a *quo warranto* action. 735 ILCS 5/18-101 (West 2022) (*quo warranto* action may be brought when "[a]ny person usurps, intrudes into, or unlawfully holds or executes any office").

¶ 17    We disagree with Mayfield's interpretation of section 55-5 of the Township Code. *Schumann*'s approach was sound, and, applying it here, we come to the same conclusion as did that court. Taking the current language in section 55-5 (60 ILCS 1/55-5 (West 2022) ("No person is eligible to hold any office unless he or she *** has been a resident of the township for one year.")), along with that in section 10-5 of the Election Code's statement of candidacy (10 ILCS 5/10-5 (West 2022) ("I am legally qualified to hold such office")), which is phrased in the present tense, leads to the same conclusion that the durational residency requirement must be satisfied by the time a candidate completes his or her statement of candidacy. The words "to hold" appear in both statutes. Thus, we reject Mayfield's argument that "to hold" means "to possess" and is tied to the taking of the oath of office. The court in *Schumann* did not read "to hold" in the Election Code in this manner, and there is no language in section 55-5 of the Township Code that even implies that this is the appropriate reading. Section 55-5 states "eligible to hold," not "no person holds," which, if the statute were so worded, would make Mayfield's arguments more convincing. Indeed, section 10-5 of the Election Code provides that the candidate swear, in substantially the following form, that

> "I, ...., being first duly sworn, say that I reside at .... street, in the city (or village) of
> ...., in the county of ...., State of Illinois; and that I am a qualified voter therein; that I am a

candidate for election to the office of .... to be voted upon at the election to be held on the .... day of ...., ....; and that *I am legally qualified to hold such office* and that *I have filed (or will file* before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act, and I hereby request that my name be printed upon the official ballot for election to such office." (Emphases added.) *Id.*

The statute contains language phrased in both the present and future tenses, reflecting that the legislature intended different requirements to be met as of different dates.

¶ 18　We also do not agree with Mayfield that the fact that section 55-5 is worded differently than section 9-1 of the Township Law of 1874 reflects a legislative intent to change the statute's meaning. See *In re Detention of Lieberman*, 201 Ill. 2d 300, 321-22 (2002) (recognizing that the amendment of an unambiguous statute usually indicates a purpose to change the law); *People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222, 231 (2005) (stating that the supreme court has "never held that a subsequent amendment may replace the plain meaning as the best evidence of the legislature's original intent"). She does not reference any legislative history reflecting the legislature's intent. In our view, it is reasonably likely here that the legislature amended the statute to update the former language, which was archaic. See, *e.g.*, *People v. Dubanowski*, 75 Ill. App. 3d 809, 811 (1979) ("It is obvious that the legislature was merely eliminating archaic language and possible sex discrimination in replacing the term 'coverture' with 'marriage.' "). It is also reasonably likely that it amended the statute so that it contains identical language ("to hold") to that in section 10-5 of the Election Code. Regardless, we disagree that enactment of section 55-5 of the Township Code was in reaction to *Schumann*. The statute could *not* have been amended in response to *Schumann*, because section 9-1 of the Township Law of 1874 was repealed months before *Schumann* was decided.

¶ 19 Next, Mayfield argues that the statement of candidacy form required by the Election Code cannot mean two different things for two different offices. She notes that other offices have durational residency requirements. General Assembly members must reside in their districts for two years prior to their election. Ill. Const. 1970, art. IV, § 2 ("a person must be *** for the two years preceding his election or appointment a resident of the district which he is to represent"). Executive officers must reside in the State for three years prior to their election. Ill. Const. 1970, art. V, § 3 ("[t]o be eligible to hold [certain executive offices,] a person must be *** a resident of this State for the three years preceding his election"). Candidates for municipal office must reside in the municipality for one year preceding their election. 65 ILCS 5/3.1-10-5(a) (West 2022) ("A person is not eligible for an elective municipal office unless that person *** has resided in the municipality at least one year next preceding the election or appointment ***."). All four offices— assessor, legislator, executive officer, and municipal officer—impose some durational residency requirement, she notes, and require candidates to execute and file a statement of candidacy to qualify for the ballot. The statements of candidacy, set forth in the Election Code, provide that the candidate attest that "I am legally qualified *** to hold such office" or "I am legally qualified to hold such office," respectively. 10 ILCS 5/7-10, 10-5 (West 2022). Mayfield notes that she filed substantively identical forms for both her current term in the House of Representatives and for township assessor. She argues that, if the present-tense language in the forms reflects that she had to reside in the township for one year preceding the date she executed the statement of candidacy for township assessor, then that form and her statement of candidacy for representative should have the same meaning; however, they do not.

¶ 20 We reject this argument. Mayfield cites constitutional and statutory provisions with explicit durational requirements. In light of their clear terms, there is no need to rely on the Election Code

to discern their meaning. Further, it is well settled that a more specific statute on a topic controls over a more generally worded statute. *McCaskill v. Municipal Officers Electoral Board*, 2019 IL App (1st) 190190, ¶ 24.

¶ 21    Next, Mayfield argues that the Board's decision that residency is tied to holding office was consistent with eligibility criteria for other local offices. She points to *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 219-20 (2008), where the supreme court held that the disqualifications in section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2006) (provided that a person "*is not eligible* for an elective municipal office" if he or she was in arrears in the payment of a tax or other indebtedness due to the municipality (emphasis added))) rendered a candidate who owed money to the village ineligible to run for village trustee if not remedied by the time the candidate filed his or her nomination papers. The plaintiff argued that section 3.1-10-5(b) applied to ineligibility to *hold* elective office, not ineligibility to *run* for elected office. The supreme court held that section 10-5 of the Election Code, which required that a candidate swear in their statement of candidacy that "I *am legally qualified to hold* such office" (emphasis added) (10 ILCS 5/10-5 (West 2006)), supported this conclusion and, thus, when candidates submit their nomination papers, they swear that they *are*, *not will be*, qualified for the office they seek. *Cinkus*, 228 Ill. 2d at 219 ("In other words, the candidate is eligible to run for office and not merely to hold office."). Mayfield notes that, consistent with *Schumann*, a candidate had to meet the eligibility requirement on the day he or she submitted a statement of candidacy, not upon taking office. However, she further notes, after *Cinkus* was decided, the legislature, similar to the situation here, amended section 3.1-10-5(b), which currently provides, in relevant part, that "[a] person is not eligible *to take the oath of office* for a municipal office if that person is, at the time required for taking the oath of office, in arrears in the payment of a tax or other

- 10 -

indebtedness due to the municipality." (Emphasis added.) 65 ILCS 5/3.1-10-5(b) (West 2022). Mayfield argues that the terms "hold" and "take the oath of office" should be read synonymously, because a person cannot "hold" an office until they "take the oath of office."

¶ 22   We reject Mayfield's argument. The supreme court read section 3.1-10-5(b) ("is not eligible") together with section 10-5 of the Election Code, noted the latter's use of the term "hold" and accompanying present-tense language, and concluded that, when a candidate submits nominating papers, he or she "is eligible to run for office and not merely to hold office." *Cinkus*, 228 Ill. 2d at 219. The wording of the relevant statutes in *Cinkus* is similar to the wording of the relevant statutes in this case. That the current version of section 3.1-10-5(b) refers to the taking of the oath of office provides no guidance to assess the issue before us, because neither relevant statute here references an oath of office. We reject Mayfield's assertion that "hold" should be read synonymously with "take the oath of office," and we believe that *Cinkus* and *Schumann* foreclose this reading.

¶ 23   Finally, Mayfield argues that courts zealously protect candidates' rights to ballot access and voters' rights to choose their leaders. This principle is especially true here, she asserts, because she is the only candidate in the Democratic primary election. Stricklin, she notes, is apparently a former Democrat and seeks not only to deny her a place on the ballot, but also to deny all Democratic voters the opportunity to nominate a candidate for the office of township assessor. The election should be decided by the voters, she urges, not in a courtroom.

¶ 24   We, of course, have no quarrel with the principle in favor of ballot access. However, the principle does not render null or inoperative relevant statutory requirements. The legislature determines the requirements for candidacy for state offices, and courts enforce compliance with such laws. The principle in favor of ballot access cannot usurp this framework. In reaching its

decision, the court in *Schumann* referenced the statute at issue and stated that ballot access restrictions are intended to protect the integrity of elections and cannot be ignored. It believed that it "struck the proper balance of maintaining the integrity of the electoral process while not unnecessarily restricting ballot access." *Schumann*, 261 Ill. App. 3d at 1067. We believe that we, too, have struck the proper balance in this case.

¶ 25    Because Mayfield had not been a resident of Waukegan Township for one year when, on October 20, 2024, she filed her statement of candidacy pursuant to section 10-5 of the Election Code, she did not satisfy the durational residency requirement in section 55-5 of the Township Code. Accordingly, we reverse the Board's decision and agree with the circuit court that Mayfield's name should not have been printed on the February 25, 2025, ballot.

¶ 26                                III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 28    Affirmed.

*Stricklin v. Electoral Board of Waukegan*, **2025 IL App (2d) 250017**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 24-MR-516; the Hon. Joseph V. Salvi, Judge, presiding. |
| **Attorneys for Appellant:** | Michael J. Kasper, of Kasper & Nottage P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert L. Windon, of Windon Strategies L.L.C., of McHenry, for appellee. |