# Illinois Official Reports

## Appellate Court

---

**Zurek v. Franklin Park Officers Electoral Board, 2014 IL App (1st) 142618**

---

| | |
|---|---|
| Appellate Court Caption | KEN ZUREK, Petitioner-Appellant, v. THE FRANKLIN PARK OFFICERS ELECTORAL BOARD, and Its Members BARRETT F. PEDERSEN, Individually and as Chairman, JOHN C. JOHNSON, Individually and as Member, TOMMY THOMSON, Individually and as Franklin Park Village Clerk; RANDALL PETERSEN, Individually and as Objector, and ROBERT GODLEWSKI, Individually and as Objector, Respondents-Appellees (David Orr as Cook County Clerk, and Lisa Madigan as Illinois Attorney General, Respondents). |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-14-2618, 1-14-3062 cons. |
| Filed | November 4, 2014 |
| Rehearing denied | December 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the trial court's decision upholding the refusal of defendant village electoral board to place on the ballot a referendum to limit the terms of village officials by prohibiting anyone from serving more than eight years, the appellate court vacated the decision of the board, the orders of the trial court were reversed, and the cause was remanded for a hearing *de novo* before an electoral board made up of impartial members appointed by the chief judge of the circuit court to replace the official members of the board pursuant to section 10-9 of the Election Code, and if a decision is made to place a referendum on the ballot, the referendum shall be placed on the ballot of the first election thereafter that meets the statutory requirements of the Election Code, and the chief judge and the newly constituted board shall act at the earliest practicable date to ensure a timely resolution of the issue. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 14-COEL-19, 14-COEL-25; the Hon. James A. Zafiratos and the Hon. Paul A. Karkula, Judges, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Kenneth P. Zurek, of Franklin Park, for appellant. |
| | Patrick G. Connelly, of Peterson, Johnson & Murray, LLC, of Chicago, and Burton S. Odelson and Sara M. Gallagher, both of Odelson & Sterk, Ltd., of Evergreen Park, for appellees. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion. Justices McBride and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1   Petitioner Ken Zurek and others collected over 700 signatures for the purpose of placing on the ballot the question of whether there should be term limits for Franklin Park village officials. Respondents Randall Petersen and Robert Godlewski filed objections, and the Franklin Park Electoral Board sustained their objections and refused to place the question on the ballot. The circuit court affirmed. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                BACKGROUND
¶ 3                   I. Proposed Referendum Question and Objections
¶ 4   In June and July, 2014, Ken Zurek and others collected over 700 signatures in order to place on the ballot for the general election on November 4, 2014, "the following binding referendum question of public policy":

> "Shall the Village of Franklin Park enact term limits prohibiting all people from serving more than eight (8) years as Village Trustee, Village President and Village Clerk, including service as Village Trustee, Village President and Village Clerk, effective immediately upon approval and passage of this binding referendum?"

¶ 5   On August 11, 2014, Randall Petersen and Robert Godlewski filed an "Objectors' Petition" to Zurek's proposed referendum question. They did not object to the number of signatures or the validity of those signatures. Their objections were directed solely at the validity of the question itself. Primarily, they objected on the ground that the question referred to years rather than terms of service and that, thus, the question was not "tied to the regular election cycles." They argued that, as a result, the question was ambiguous as to what would happen when an officer reached the eight-year limit and ambiguous as to whether the referendum had the power to nullify the results of the prior 2013 election.

## II. Appeal No. 1-14-2618

### A. Petition

Ken Zurek filed a petition with the circuit court on August 15, 2014, seeking the replacement of all three members of the Franklin Park Electoral Board with three public members, claiming that it was to ensure a fair and impartial hearing of the objections to his proposed term limit referendum pending before the Franklin Park Electoral Board.

In his petition, he alleged the following facts.

On July 28, 2014, Zurek and Peter Negron, who is not a party to this consolidated appeal, filed a proposed "referendum question of public policy" with the Franklin Park village clerk which asked whether Franklin Park should enact term limits prohibiting all the village's elected officials from serving more than eight years, and on August 11, 2014, Randall Petersen and Robert Godlewski filed a petition objecting to the referendum question.

Franklin Park has an electoral board whose three members are: (1) the village president, Barrett F. Pedersen; (2) a village trustee, John C. Johnson; and (3) the village clerk, Tommy Thomson. If the proposed term-limit referendum is passed, it would preclude all three of them from running for their positions again in 2017 and thereafter.

Pedersen, as the village president, is a salaried employee and has announced that he is running again for village president in 2017, and he has formed a political committee to achieve that end.

John C. Johnson, as a village trustee, and Tommy Thomson, as the village clerk, are also salaried employees.

Attached to the petition were several documents. The first exhibit included, among other things, a copy of an amendment, dated February 10, 2014, of the "Statement of Organization" for "Friends of Barrett Pedersen," which stated that the office he was seeking was "Franklin Park Mayor 2017."

The second exhibit was a copy of a Herald Journal article from July 31, 2014, entitled: "Petitions seek term limit referendum in Franklin Park." The article described Zurek and others as being for it and then stated: "Trustee John Johnson sees it differently." The article then quoted Johnson as stating: "Every two years, people have the opportunity to elect half the board."

### B. Response

The record does not contain any response to the petition by Randall Petersen and Robert Godlewski, the two individuals who filed objections to Zurek's proposed referendum question.

However, on August 25, 2014, the Franklin Park Electoral Board filed a response, which stated:

> "The Objections raise only questions of law as to the question itself. There is no attack to signatures, circulators, form of the petition, or the manner of collecting the signatures. The arguments made are all as to the constitutionality and legal import of the question itself. There are no fact questions for the Electoral Board to decide."

As quoted above, the board's response stated that there were "no fact questions for the Electoral Board to decide" and, thus, the board did not dispute any facts asserted in Zurek's August 15, 2014, petition.

¶ 19    In its response, the board argued that section 10-9(6) of the Election Code expressly limits the grounds on which an electoral board member may be disqualified to only those situations in which an electoral board member "is a candidate for the office with relation to which the objector's petition is filed." Pub. Act 98-115 (eff. July 29, 2013) (amending 10 ILCS 5/10-9 (West 2012)). However, since the board chose not to dispute any facts, it did not deny that the three members of the electoral board are candidates for their same positions in the next election.

¶ 20                                C. Reply
¶ 21    In his reply, Zurek argued, among other things, that the board lacked standing to defend its own decision in court.

¶ 22                D. Order Appealed From in Appeal No. 1-14-2618
¶ 23    On August 28, 2014, the trial court denied Zurek's petition to disqualify the three-member electoral board, holding:

> "1. The Court rules in accordance with 10 ILCS 5/10-9(6)(d) which establishes a process for the substitution of an Electoral Board in the event of a Conflict, and not based upon Cook County Circuit Rule 21 as claimed by Petitioner. See *Kaemmerer*, 333 Ill. App. 3d at 959-60 [(*Kaemmerer v. St. Clair County Electoral Board*, 333 Ill. App. 3d 956, 959-60 (2002))].
>
> 2. The petitioner has not overcome the 'presumption of honesty' by falling to show either 'dishonesty' or an 'unacceptable risk of bias.' *Girot v. Keith*, 212 Ill. 2d 372 at 380 [(*Girot v. Keith*, 212 Ill. 2d 372, 380 (2004))].
>
> Accordingly, it is hereby ordered that petitioners request to disqualify the board is denied."

¶ 24    This order was entered in case No. 14 COEL 19, and it is the subject of appeal No. 1-14-2618. On August 29, 2014, Zurek filed a notice of appeal from this order, which asked this court:

> "to reverse the above-cited Circuit Court Final Order [filed August 28, 2014] and remand this cause with directions to the Circuit Court of Cook County in Illinois to:
>
> (1) Enter an order replacing the entire Franklin Park Electoral Board with public members forthwith, and
>
> (2) Should this appeal be considered mooted the Appellate Court should decide this appeal under the public interest doctrine."

¶ 25    The notice of appeal in appeal No. 1-14-2618 does not list any defendants and instead is captioned "in the matter of" Zurek's term limit petition and his request to replace the Franklin Park Electoral Board with public members.

¶ 26                        III. Appeal No. 1-14-3062
¶ 27    On August 26, 2014, which was two days before the trial court's order in appeal No. 1-14-2618, Zurek filed a motion with the electoral board to strike the objectors' petition alleging numerous defects, including: (1) that the objectors are not legal voters as expressly required by the Election Code; (2) that the objectors do not allege any actual conflict if the

referendum question is applied to current Franklin Park officers; (3) that, since the term of office for the village president, trustee and clerk remains four years, the referendum's eight-year limit works perfectly with the existing election cycle; (4) that the referendum prohibits an individual from serving more than two terms; and (5) that a hypothetical conflict in some future election is not enough to defeat the will of the over 700 voters who signed in favor of the referendum, without a single signature challenged.

¶ 28    Zurek attached as an exhibit documents showing that the voters of the Village of Niles passed in the April 9, 2013, general election a referendum which was worded almost exactly the same as Zurek's proposed referendum. The Niles referendum asked: "Shall the Village of Niles enact term limits prohibiting all people from serving more than 15 years on the Village of Niles Board of Trustees, including service as President/Mayor of the Village and Village Board, effective immediately upon approval and passage of this binding referendum?"

¶ 29    On August 26, 2014, Zurek also filed: (1) written objections to the composition of the board, in which he asked the three board members to recuse themselves so that they could be replaced with public members; (2) a motion to disqualify the board's attorney; and (3) a motion to strike various rules of the Franklin Park Electoral Board, such as Rule No. 10, which authorized the board to retain an attorney for the purpose of defending the board's decision in court.[1] He moved to strike on the ground that the board had no standing to act as an advocate.

¶ 30    The board held public hearings on Petersen and Godlewski's objections to Zurek's referendum question on August 18, September 11 and September 17, 2014, and allowed public comment on September 11. Those present at the public hearings included Zurek and Patrick G. Connelly, who was the counsel for Petersen and Godlewski.

¶ 31    At the public hearing on September 11, 2014, the board members considered Zurek's motion that they recuse themselves, and they voted to adopt the August 28, 2014, trial court order which had denied this same request in the other case. Zurek objected and asked the board members to reconsider; and the board voted again to deny his recusal motion.

¶ 32    On September 17, 2014, the Franklin Park Electoral Board, consisting of Pedersen, Thomson and Johnson, issued an 11-page document entitled "Findings and Decision." Pub. Act 98-115 (eff. July 29, 2013) ("The electoral board must state its findings in writing and must state in writing which objections, if any, it has sustained."). In this decision, the board found that the "Electoral Board was legally constituted according to the laws of the State of Illinois," and it denied Zurek's objections to the composition of the board. The primary reason which it provided in support of its denial was: "In light of the [Judge] Zafiratos Order [entered August 28, 2014], Proponent's Electoral Board Motion is denied." In addition, the board observed that the "Election Code contains no mechanism for electoral board members to individually recuse themselves from service for any reason."

¶ 33    With respect to Petersen and Godlewski's objections, the board sustained their objections:
    "with the result that the Petition for Referendum is found INVALID, in conformity with the findings above, and that the Proponent's referendum question shall not appear on the ballot for the November 4, 2014, General Election."

---

[1]The rules are in the appellate record, and Rule No. 10 provides in relevant part: "The Board's attorney is authorized and directed to defend the Board's decision if a petition for judicial review is filed and to defend the Board in any litigation that may arise thereafter."

¶ 34 On September 18, 2014, the next day after the board issued its decision, Zurek petitioned the circuit court for judicial review. 10 ILCS 5/10-10.1 (West 2012) (an "objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court" by filing "a petition with the clerk of the court" and serving a copy "upon the electoral board and other parties to the proceeding"). The requested relief included that, if it should "be rendered impossible for the term limit referendum to be included on the November 4, 2014 general election ballot then the court should enter an order directing the Cook County Clerk to include the term limit referendum on the ballot for the next scheduled general election."

¶ 35 On September 25, 2014, Petersen and Godlewski, the two objectors, filed a motion to dismiss Zurek's petition for lack of subject matter jurisdiction because Zurek allegedly failed to file proof of service. The attorney and law firm that filed an appearance in this case on behalf of the Village of Franklin Park was the same attorney and law firm that filed this motion on behalf of the objectors. The board also joined the objectors' motion.

¶ 36 The trial court affirmed the decision of the board less than a month later, on October 7, 2014. At the hearing, the court stated that it would not consider the "issue regarding the composition of the Board," because that issue had already been decided by another judge. The next day, on October 8, 2014, Zurek filed a notice of appeal from that decision. 10 ILCS 5/10-10.1 (West 2012) (the trial court "shall make its decision promptly"). This became appeal No. 1-14-3062.

¶ 37 A day after filing appeal No. 1-14-3062, Zurek filed a motion on October 9, 2014, with the appellate court to consolidate both appeals, which this court granted on October 10, 2014. This court also ordered an expedited briefing schedule, with appellant's consolidated brief due Wednesday, October 15, 2014, appellee's consolidated brief due Monday, October 20, 2014, and no reply brief allowed. Early voting began in Cook County on Monday, October 20, 2014.

¶ 38 The petition in circuit court No. 14 COEL 25 and the subsequent notice of appeal for No. 1-14-3062 include as defendants: (1) Randall Petersen and Robert Godlewski, the two objectors to Zurek's proposed referendum; (2) David Orr, the Cook County clerk; and (3) Lisa Madigan, the Illinois Attorney General. Zurek's petition explains that he named: (1) David Orr because, in Orr's capacity as county clerk, he is required to certify and print the ballot for the November 4, 2014, election in Franklin Park; and (2) Lisa Madigan because, in her capacity as Attorney General, she is required to defend the constitutionality of Illinois statutes. Although Lisa Madigan and David Orr filed appearances in the court below, they chose not to file briefs with this court. David Orr filed an answer in the trial court stating that he had "no interest" in the issue. Thus, they are not parties to this appeal.

¶ 39                                                    ANALYSIS

¶ 40 As we stated above, petitioner Ken Zurek and others collected over 700 signatures for the purpose of placing on the ballot the question of whether there should be term limits for Franklin Park village officials. Respondents Randall Petersen and Robert Godlewski filed objections, and the Franklin Park Electoral Board sustained their objections and did not place the question on the ballot. The circuit court affirmed. For the following reasons, we reverse and remand for further proceedings.

As a preliminary issue, petitioner Zurek argued in his appellate brief that the board lacked standing to file a brief in the trial court. In addition, he filed an appellate motion stating that the board lacked standing in this court and requesting that we disregard the board's appellate brief. He argued that "for the Franklin Park Municipal Officers Electoral Board to act as [an] advocate in this appeal is just as ludicrous as if [the trial judges] would hire attorneys to file briefs in their behalf in support of their decisions." The board chose not to address the standing issue in its appellate brief, but it did file a separate response to the motion. We took the motion and response under advisement to be decided in this opinion and, for the reasons discussed below, we conclude that the board has standing and, even if it does not have standing, it would not affect our decision in this case. *Sakonyi v. Lindsey*, 261 Ill. App. 3d 821, 823 (1994) (determination of whether the board has standing to defend its decision does not affect the outcome of the appeal).

In *Bendell v. Education Officers Electoral Board for School District 148*, 338 Ill. App. 3d 458 (2003), this court addressed the issue of: "whether the Board and its members have standing to appeal the circuit court's reversal of the Board's decision." *Bendell*, 338 Ill. App. 3d at 460. However, in the case at bar, the issue is whether the board can file a brief and argue its position as a nominal defendant.

In *Bendell*, we found:

"[T]he Election Code does not expressly or implicitly authorize the Board to assume the role of advocate for the purpose of prosecuting an appeal. See 10 ILCS 5/1-1 *et seq.* (West 1996); *Kozenczak*, 299 Ill. App. 3d at 207. Instead, the Election Code only authorizes the Board to conduct hearings, administer oaths, subpoena and examine witnesses, subpoena documentary evidence, and pass upon objections to nomination petitions and objections to petitions for the submission of questions of public policy. See 10 ILCS 5/10-9, 10-10, 28-4 (West 1996); *Kozenczak*, 299 Ill. App. 3d at 207. The court further held that the Board functions in an adjudicatory or quasi-judicial capacity, and that to allow the Board to assume the role of advocate would compromise the Board's required duty of impartiality. *Kozenczak*, 299 Ill. App. 3d at 207. The court further stated that the Board was not a party before an administrative agency, nor was it personally aggrieved by the reversal of its decision. *Kozenczak*, 299 Ill. App. 3d at 207. We find the reasoning in *Kozenczak* to be persuasive and conclude, therefore, that the Board lacks standing to prosecute this appeal." *Bendell*, 338 Ill. App. 3d at 460.

The above quote discusses sections of the Code as they existed in 1996. However, there have been no changes to these sections of the Code which affect our decision. See Pub. Act 98-115 (eff. July 29, 2013).

In the above quote, we relied extensively on the *Kozenczak* case in which the appellate court ruled, as we did in *Bendell*, that the electoral board lacked standing to prosecute an appeal. *Kozenczak v. Du Page County Officers Electoral Board*, 299 Ill. App. 3d 205, 207 (1998) ("the Board lacks standing to prosecute this appeal").

There are many appeals in which the electoral board has filed a brief; but these are primarily cases in which the appellee did not challenge the board's standing and thus standing was not an issue in those appeals. *E.g.*, *Burke v. Electoral Board of the Village of Bradley*, 2013 IL App (3d) 130141, ¶ 32 (the electoral board appears to have filed an appellate brief

because the court stated that "[n]either the Electoral Board nor the objector has identified a single case" with a particular holding; but standing was not raised as an issue).

¶ 48    Similarly, the *Kozenczak* court observed: "While the Board cites several cases in which an electoral board appealed the reversal of its decision to the appellate court [citations], we find each of those cases to be inapposite. The appellee never challenged the electoral boards' standing in those cases, and, thus, standing was never an issue on appeal." *Kozenczak*, 299 Ill. App. 3d at 207 (citing *El-Aboudi v. Thompson*, 293 Ill. App. 3d 191 (1997), *Thomas v. Powell*, 289 Ill. App. 3d 143 (1997), *Allord v. Municipal Officers Electoral Board*, 288 Ill. App. 3d 897 (1997), and *Schumann v. Fleming*, 261 Ill. App. 3d 1062 (1994)).

¶ 49    The board failed to cite any authority to support its position that it has standing to file a brief and plaintiff cannot cite a case where the board was prohibited from filing a brief. The board's response asserts that a response by an electoral board is filed "virtually every time an electoral board matter is appealed" and that its counsel is "counsel to many electoral boards during election cycles." In addition, we cannot find an Illinois case that states an electoral board cannot file a brief when it has been made a nominal defendant in a lawsuit.

¶ 50    In *Speck v. Zoning Board of Appeals*, 89 Ill. 2d 482, 485-86 (1982), our supreme court analyzed the powers and responsibilities of the zoning board as set forth in the Chicago zoning ordinance and concluded that a zoning board lacked standing to prosecute an appeal from a reversal of its own decision, since the board functioned in an adjudicatory or quasi-judicial capacity and the ordinance did not authorize the board, either explicitly or implicitly, to act as an advocate. *Speck*, 89 Ill. 2d at 485-86.

¶ 51    From this *Speck* line of cases, our supreme court subsequently carved out an exception in *Braun v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 108 Ill. 2d 119, 128 (1985). In *Braun*, the supreme court observed that the retirement board, unlike the zoning board in *Speck*, had extensive managerial responsibilities so that it was more than a tribunal. *Braun*, 108 Ill. 2d at 128.

¶ 52    However, the *Kozenczak* court expressly held that the *Braun* exception does not apply to election boards, for the following reasons:

"Like the zoning ordinance in *Speck*, the Election Code (10 ILCS 5/1-1 *et seq.* (West 1996)) does not expressly or implicitly authorize the Board 'to assume the role of advocate for the purpose of prosecuting an appeal.' See *Speck*, 89 Ill. 2d at 485. Instead, the Election Code only authorizes the Board to conduct hearings, administer oaths, subpoena and examine witnesses, subpoena documentary evidence, and pass upon objections to nomination petitions and objections to petitions for the submission of questions of public policy. See 10 ILCS 5/10-9, 10-10, 28-4 (West 1996). Thus, like the zoning board in *Speck*, the Board here functions 'in an adjudicatory or quasi-judicial capacity,' and to allow the Board to assume the role of advocate would compromise the Board's required duty of impartiality. See *Speck*, 89 Ill. 2d at 485-86. ***

Furthermore, unlike the retirement board in *Braun*, there is no evidence that the Board in this case '[had] extensive managerial responsibilities [so that it was] more than a tribunal.' *Braun*, 108 Ill. 2d at 128. In fact, the Election Code provides otherwise. Therefore, *Braun* is distinguishable, and the Board lacks standing to prosecute this appeal according to *Speck*." *Kozenczak*, 299 Ill. App. 3d at 207.

Thus, the *Braun* exception does not apply to the case at bar, and the *Speck* line of cases concerns standing to appeal, not standing to file a brief when the board is made a nominal defendant in a lawsuit.

¶ 53    The only case cited by the board in its response to Zurek's motion is *Kozenczak*. In its response, the board argues that, since it was named as a respondent, it therefore has standing to file a brief.

¶ 54    The only statutory section cited by the board in its response is section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2012)), which governs judicial review of electoral board decisions and which, the board argues, authorizes it to "act[ ] as a Respondent." However, this section does not say that. This section directs the objector to serve a copy of his or her petition on the electoral board which, in turn, then triggers the board's duty to file the record of proceedings with the clerk of the court. 10 ILCS 5/10-10.1 (West 2012). This section specifically provides: "No answer to the petition need be filed ***." 10 ILCS 5/10-10.1 (West 2012). There is nothing in this section which confers standing on the board to act as an advocate for its administrative decision in subsequent court proceedings. *Cf. Bettis v. Marsaglia*, 2013 IL App (4th) 130145, ¶ 27 (the Election Code does not require the naming of the electoral board and its members in the caption of the petition for judicial review).

¶ 55    We continue to adhere to the view we expressed in *Bendell* that electoral boards must remain impartial and cannot simultaneously serve as impartial adjudicators while appealing the reversal of their own decisions. However, as we have previously pointed out, plaintiff made the board a nominal defendant, and as a result, the board should have standing to file a brief. Thus, the Franklin Park Electoral Board and its three members, Barrett F. Pedersen, John C. Johnson and Tommy Thomson, have standing to pursue this appeal.

¶ 56    However, there is no real standing issue in this case. Traditionally, standing is a legal concept that applies to one bringing a lawsuit and requires that a party have a sufficient personal and direct stake in the controversy to obtain a judicial resolution of it. Standing requires that there be some kind of injury or damage in fact, such that the party can maintain a suit in the traditional adversarial relationship found in the judicial process.

¶ 57    We cannot find any authority for the concept that standing applies to a nominal defendant's ability to file a brief in the appellate court, nor has plaintiff cited any relevant authority to that issue. Ray Vaughn, *Proof of Standing in Environmental Citizen Suits*, 35 Am. Jur. Proof of Facts 3d 493 (1996).

¶ 58    However, even if the Board did not have standing, this would not affect the standing of the objectors to pursue this appeal. *Bendell*, 338 Ill. App. 3d at 461 (the objector has "standing to prosecute this appeal"); *Kozenczak*, 299 Ill. App. 3d at 208 (the objector "clearly has standing to prosecute the appeal"). They still have standing, and we will consider their brief.

¶ 59                                    II. Standard of Review

¶ 60    Appeal No. 1-14-3062 includes a decision by the electoral board, as well as a ruling by the trial court. Typically, when an appeal includes both a decision by an electoral board and a ruling by the trial court, we review the decision by the electoral board and not the ruling by the trial court. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008) ("where a circuit court reviews an electoral board's decision *** we review the decision of the board, not the court"). However, the review in this case is somewhat convoluted

because the board's decision was based on a prior trial court's order, which was the order in appeal No. 1-14-2618.

¶ 61 The order in appeal No. 1-14-2618 includes only a ruling by the trial court, but both appeals concern the same preliminary question which must be answered before the objectors' petition can be addressed, and that is: whether the existing three-person electoral board could review the objectors' petition.

¶ 62 First, we observe that " '[j]udical review of the decision of an electoral board is intended to remedy arbitrary or unsupported decisions.' " *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 832 (1997) (quoting *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69, 72 (1994)). While we review questions of fact deferentially and we will disturb factual determinations only if they are against the manifest weight of the evidence, we review questions of law *de novo*. *Anderson*, 289 Ill. App. 3d at 832 (citing *Reyes*, 265 Ill. App. 3d at 72). A judgment is against the manifest weight of the evidence when an opposite conclusion is readily apparent, or when the findings appear to be unreasonable, arbitrary or not based upon the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996).

¶ 63 Since the resolution of this appeal requires us to interpret a section of the Election Code, it presents a question of law that we review *de novo*. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). *De novo* consideration means that we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 64 When we construe the meaning of a statute, "the primary objective of this court is to ascertain and give effect to the intention of the legislature, and all other rules of statutory construction are subordinated to this cardinal principle." *Metzger*, 209 Ill. 2d at 34. "The plain language of the statute is the best indicator of the legislature's intent." *Metzger*, 209 Ill. 2d at 34-35. "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Metzger*, 209 Ill. 2d at 35. "When interpreting legislative enactments, we must read the statute as a whole and not as isolated provisions." *Metzger*, 209 Ill. 2d at 37. In this endeavor, we consider both any stated purpose of the particular code, as well as what Illinois courts have previously determined the purpose of the code to be. *Metzger*, 209 Ill. 2d at 37. We view the code "as a whole" in order to determine the purpose that the code was "primarily designed" to accomplish. *Metzger*, 209 Ill. 2d at 38.

¶ 65                              III. The Election Code

¶ 66 Section 10-9 of the Election Code (the Code) provides that the "municipal officers electoral board" will "hear and pass upon objections to the nominations of candidates for officers of municipalities." Pub. Act 98-115 (eff. July 29, 2013).

¶ 67 Section 28-4 states in its first sentence that, in addition to applying to candidates, section 10-9 "shall apply to and govern, insofar as may be practicable, objections to petitions for the submission of questions of public policy" (10 ILCS 5/28-4 (West 2012)), such as the term-limit referendum question proposed in the case at bar by Zurek. Section 28-4 also repeats in the next paragraph that the "electoral board to hear and pass on objections" to public policy questions "shall be the electoral board specified in Section 10-9." 10 ILCS 5/28-4 (West 2012).

¶ 68 Although the first sentence uses the word "shall," the legislators chose to soften the normally mandatory quality of this word with the modifying phrase: "insofar as may be practicable." *Brennan v. Illinois State Board of Elections*, 336 Ill. App. 3d 749, 759 (2002)

("The use of the word 'shall' is generally regarded as mandatory when used in a statutory provision but can be construed as directory depending on the legislative intent."); *Courtney v. County Officers Electoral Board*, 314 Ill. App. 3d 870, 873 (2000) ("The use of the word 'shall' in a statutory provision, though generally regarded as mandatory, does not have a fixed or inflexible meaning and may, in fact, be construed as meaning 'may' depending on the legislative intent. [Citations.] And, the word 'shall,' in construing election statutes, has been held directory rather than mandatory in a variety of cases."); *Glasco Electric Co. v. Department of Revenue*, 87 Ill. App. 3d 1070, 1073 (1980) ("[W]e consider the trend to construe the word 'shall' as not being absolutely mandatory to be significant.").

¶ 69    Thus, insofar as may be practicable, section 10-9 applies to the case at bar, and it provides that a "municipal" electoral board "shall be composed of *** the president of the board of trustees" of the village, the "town clerk," and "one member of the *** board of trustees *** [who] has served the greatest number of years as a member of the *** board of trustees." Pub. Act 98-115 (eff. July 29, 2013).[2]

¶ 70    In the case at bar, these three individuals are: (1) the village president, defendant Barrett F. Pedersen; (2) the village clerk, Tommy Thomson; and (3) a village trustee, defendant John C. Johnson. Plaintiff seeks the disqualification of all three members.

¶ 71    Section 10-9 provides for disqualification on the following ground:

> "In the event that any member of the appropriate board is a candidate for the office with relation to which the objector's petition is filed, he shall not be eligible to serve on that board and shall not act as a member of the board ***." Pub. Act 98-115 (eff. July 29, 2013).

¶ 72    The Code does not define the phrase "with relation to" quoted above. Pub. Act 98-115 (eff. July 29, 2013). When a statute or code fails to define a word or phrase, then it is the job of the courts to ascertain its meaning. *Brandt Construction Co. v. Ludwig*, 376 Ill. App. 3d 94, 104-05 (2007) (" 'The province of statutory interpretation belongs specifically to the courts, which have their own expertise in statutory construction.' " (quoting *Board of Trustees of the Addison Fire Protection District No. 1 Pension Fund v. Stamp*, 241 Ill. App. 3d 873, 884 (1993))).

¶ 73    The Code then specifies who the substitute is, if an electoral board member is disqualified. Pub. Act 98-115 (eff. July 29, 2013). However, if the vacancies cannot be filled pursuant to section 10-9, then the Code provides that the chief judge shall appoint public members. Pub. Act 98-115 (eff. July 29, 2013).

¶ 74    Regarding public members, section 10-9 provides:

> "Any vacancies on an electoral board not otherwise filled pursuant to this Section shall be filled by public members appointed by the Chief Judge of the Circuit Court for the county wherein the electoral board hearing is being held upon notification to the Chief Judge of such vacancies. The Chief Judge shall be so notified by a member of the electoral board or the officer or board with whom the objector's petition was filed. In the event that none of the individuals designated by this Section to serve on the

---

[2]Subsection 3 of section 10-9 dictates the composition of "municipal" electoral boards, and the definitions section of the Code defines the word "municipality" to include a "village" (10 ILCS 5/1-3 (West 2012)), such as the Village of Franklin Park.

electoral board are eligible, the chairman of an electoral board shall be designated by the Chief Judge." Pub. Act 98-115 (eff. July 29, 2013).

¶ 75 In the case at bar, plaintiff seeks the appointment of public members by the chief judge pursuant to the above-quoted section. Although the section quoted above provides for notification of the chief judge "by a member of the electoral board" (Pub. Act 98-115 (eff. July 29, 2013)), it does not state what happens when every member of the board is not "eligible to serve on that board" because his or her candidacy is in "relation to" the objector's petition. Pub. Act 98-115 (eff. July 29, 2013) (appearing earlier in the same section).

¶ 76                                    IV. General Order No. 21

¶ 77 Pursuant to section 10-9 of the Code, the chief judge of the circuit court of Cook County issued "General Order No. 21–Electoral Boards." Cook Co. Cir. Ct. G.O. 21 (Feb. 1, 2005). The chief judge of each circuit is permitted to issue "general orders" by Illinois Supreme Court Rule 21(c), which states: "The chief judge of each circuit may enter general orders in the exercise of his or her general administrative authority, including orders providing for assignment of judges, general or specialized divisions, and times and places of holding court." Ill. S. Ct. R. 21(c) (eff. Dec. 1, 2008).

¶ 78 General Order No. 21 states: "The following procedures shall govern the nomination by the Chief Judge of a public member of an electoral board pursuant to Section 10-9 of the Election Code [citation]." Cook Co. Cir. Ct. G.O. 21 (Feb. 1, 2005).

¶ 79 The order provides that, in addition to a member of the electoral board, "a party to a case before the board" may also "notify the Chief Judge of the need to appoint a public member," which is what occurred in the case at bar. Cook Co. Cir. Ct. G.O. 21 (Feb. 1, 2005). The notification must be in a signed writing and may be in the form of a letter, which it was in the case at bar.

¶ 80 The order discusses grounds for disqualification as follows:

"Members of an electoral board must be disqualified on due process grounds if they have a personal or direct pecuniary interest in the outcome of a case or if one of the members would properly be called as a necessary witness in a case and therefore required to judge his or her own testimony. However, electoral board members do not have a disqualifying interest because they may be political allies or opponents of a party in a case or merely because they are familiar with the facts of the case. Neither may a statutory member cause a vacancy to be filled by this General Order by a personal preference or convenience of that statutory member not to sit or merely because a party has requested such disqualification." Cook Co. Cir. Ct. G.O. 21 (Feb. 1, 2005).

¶ 81 The above provision could be interpreted as providing additional grounds for disqualification not found in the Code, or as simply interpreting the statutory phrase "with relation to." Pub. Act 98-115 (eff. July 29, 2013). However, we are not called upon to decide this issue in the case at bar, since the statutory disqualification applies here.

¶ 82                                    V. "With Relation To"

¶ 83          In this appeal, the objectors did not discuss in their brief whether the three existing members of the board were statutorily barred from reviewing the objectors' petition. However, the board did address the issue.

¶ 84          Zurek had asserted in his opening appellate brief that this "situation is no different than if petitioner had been running for a township office and his nominating petition were before the Electoral Board," and cited in support *Anderson v. McHenry Township*, 289 Ill. App. 3d 830 (1997). He further argued that the board's assertion that the Code provided no mechanism for recusal was false and cited in support section 10-9 of the Code which instructs the chief judge to appoint public members (Pub. Act 98-115 (eff. July 29, 2013)). See *Kaemmerer*, 333 Ill. App. 3d at 960 ("each member of the Electoral Board whose opponent was being challenged should have recused himself from all electoral challenges at issue"); *Girot v. Keith*, 212 Ill. 2d 372, 378 (2004) ("we agree with *Kaemmerer*"). For the following reasons, we agree.

¶ 85          As discussed above, the Code provides that an electoral board member may not serve on the board if he or she is "a candidate for the office with relation to which the objector's petition is filed." Pub. Act 98-115 (eff. July 29, 2013). The three members of the board did not deny in their findings and decision that they are candidates for reelection. Thus, they are, quite literally, "candidate[s] for the office with relation to which the objector[s'] petition is filed."

¶ 86          The appellate court in *Anderson* interpreted the exact same statutory section with respect to an almost identical issue. *Anderson*, 289 Ill. App. 3d at 833. In *Anderson*, the petitioner submitted a referendum question to dissolve McHenry Township. *Anderson*, 289 Ill. App. 3d at 831. Since the three members of the electoral board were all township officials, the referendum meant that all three would lose their township jobs. *Anderson*, 289 Ill. App. 3d at 831. The appellate court held that section 10-9 of the Code "should have been used to excuse the members of the Electoral Board and to appoint disinterested members to hear the objections." *Anderson*, 289 Ill. App. 3d at 833. The court reasoned that this "situation is no different than if petitioner had been running for a township office and his nominating petition were before the Electoral Board," since his referendum question represented a direct challenge to the board itself. *Anderson*, 289 Ill. App. 3d at 833.

¶ 87          The court in *Anderson* found that the board members of McHenry Township had a pecuniary/financial interest in the outcome since they were salaried and would face a loss of income if the township was dissolved. The court found that the electoral board members should have been excused and disinterested members appointed when the petitioner's referendum constituted a direct challenge to each member's position and continued employment with McHenry Township. *Anderson*, 289 Ill. App. 3d at 833.

¶ 88          In the case at bar, Zurek's referendum question represents an even more direct challenge to the board itself than in *Anderson*. Based on *Anderson* and the unambiguous language of the statute itself, we conclude that Zurek's question is in "relation to" the board members' candidacy for the very offices which were specifically named in his question. See Pub. Act 98-115 (eff. July 29, 2013). Thus, as in *Anderson*, the board members "should have been" replaced by public members, as specified in section 10-9 of the Code (Pub. Act 98-115 (eff. July 29, 2013)). *Anderson*, 289 Ill. App. 3d at 833.

VI. Issue Not Before Us

¶ 90     The one issue not presently before this court is: whether Zurek's objections bar Godlewski and Petersen's objection petition and, if they do not, whether the objections of Godlewski and Petersen bar Zurek's proposed referendum question from being placed on the ballot in November 2014.

¶ 91     That issue is not before us. The Code sets forth a specific process for reviewing objections, even in cases like this one when existing electoral board members are not "eligible to serve on that board" (Pub. Act 98-115 (eff. July 29, 2013)). The process specified by the Code is review by substitute members. Pub. Act 98-115 (eff. July 29, 2013). See also *Girot*, 212 Ill. 2d at 378. In *Girot*, our supreme court found that a conflict requiring a recusal of a board member can arise where an unacceptable risk of bias is present. In this case, in addition to the statutory violation, it can be argued that since the board members, all salaried employees of Franklin Park, have a possible financial or pecuniary interest in whether the referendum is placed on the ballot, there is also an unacceptable risk of bias. Where there is an unacceptable risk of bias present, the petitioner's right to a fair and impartial hearing is lost.

¶ 92     Thus, Godlewski and Petersen's objection and Zurek's objection should be reviewed first by a substituted board, as the Code expressly provides, and that is exactly what the appellate court ordered when previously faced with this issue.

¶ 93     In both *Kaemmerer v. St. Clair County Electoral Board*, 333 Ill. App. 3d 956, 960 (2002), and *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 834 (1997), the appellate court concluded that the electoral board was improperly constituted, as we do in the case at bar. Following that conclusion, the *Kaemmerer* court held: "Because the Electoral Board was improperly constituted, its decisions must be vacated and the objections must be heard and considered by a properly constituted board." *Kaemmerer*, 333 Ill. App. 3d at 961. See also *Anderson*, 289 Ill. App. 3d at 834. The court reasoned: "Just as with the circuit court, our jurisdiction is not original; it is limited and derivative. Before this court can act, there must be a decision from a validly constituted board, followed by a review by and an order of the circuit court in regard to that decision." *Kaemmerer*, 333 Ill. App. 3d at 961. See also *Anderson*, 289 Ill. App. 3d at 834.

¶ 94     The *Kaemmerer* court held that there were "material issues of fact that must be decided by the appropriate hearing body." *Kaemmerer*, 333 Ill. App. 3d at 961.[3] See also *Anderson*, 289 Ill. App. 3d at 832 (the petitioner who had submitted the referendum question had countered his objectors with factual allegations, such as that the electoral board had "illegally sampled the unregistered voter cards"). Similarly, in the case at bar, there are material issues of fact since Zurek has made factual allegations, such as that the objections to his petition are merely hypothetical and that the objectors were not legal voters.

¶ 95     Thus, the main issue before us presently is whether the three current members of the Franklin Park Electoral Board should have been replaced by public members for the purpose of reviewing the objections and, as we concluded above, they should have been. *Anderson*, 289 Ill. App. 3d at 833.

---

[3]The *Kaemmerer* opinion does not state what the "material issues of fact" are. *Kaemmerer*, 333 Ill. App. 3d at 961. The opinion only states that there were "objections to the candidates' nominating papers." *Kaemmerer*, 333 Ill. App. 3d at 957.

¶ 96                    VII. Public Interest Exception to the Mootness Doctrine

¶ 97        Since it is already election day, the chief judge cannot appoint public members and the newly constituted board cannot then review the objections in time to place Zurek's proposed referendum question on the ballot for the November 4, 2014, general election. The Election Code provides that "notice of public questions shall be required" not "less than 10 days before the date of a regular election." 10 ILCS 5/12-5 (West 2012). See also 10 ILCS 5/28-5 (West 2012) ("Not less than 68 days before a regularly scheduled election, each local election official shall certify the public questions to be submitted to the voters of or within his political subdivision at that election which have been initiated by petitions filed in his office ***."). We must therefore consider whether the question before us has become moot.

¶ 98        In his notice of appeal, Zurek asked us specifically to consider whether we should decide this appeal pursuant to the public interest exception to the mootness doctrine, even if its timing rendered it otherwise moot. We agree that the public interest exception applies. As the *Anderson* court concluded when considering a virtually identical issue, "[t]his matter clearly falls under the public interest exception to the mootness doctrine, in that it presents an important public issue evasive of review and capable of repetition, which, because of the disparate resolutions by electoral boards of similar issues, requires authoritative guidance." *Anderson*, 289 Ill. App. 3d at 832. See also *Girot*, 212 Ill. 2d at 382-83 (deciding to review an election question pursuant to the public interest exception); *Bettis*, 2013 IL App (4th) 130145, ¶ 27 (same).


¶ 99                              VIII. Remand for Further Proceedings

¶ 100        When Zurek petitioned the circuit court for judicial review (10 ILCS 5/10-10.1 (West 2012)), his requested relief included that, if it should "be rendered impossible for the term limit referendum to be included on the November 4, 2014 general election ballot then the court should enter an order directing the Cook County Clerk to include the term limit referendum on the ballot for the next scheduled general election."

¶ 101        In both *Kaemmerer*, 333 Ill. App. 3d at 960, and *Anderson*, 289 Ill. App. 3d at 834, after concluding that the electoral board was improperly constituted and that the issue should be reviewed first by a newly constituted board, the appellate court remanded to allow that process to happen.

¶ 102        In *Kaemmerer*, the appellate court issued the following ruling: "we remand this case to the Electoral Board for a hearing *de novo* before an Electoral Board composed of impartial members, and we direct the chief judge of the *** circuit court to appoint replacement members to the Electoral Board pursuant to section 10-9(6) of the Code. The chief judge and the Electoral Board shall each act at the earliest practicable date to ensure a timely resolution." *Kaemmerer*, 333 Ill. App. 3d at 961.

¶ 103        Similarly, in *Anderson*, 289 Ill. App. 3d at 834, the appellate court "remand[ed] for a new hearing *de novo* before an electoral board composed of impartial members" and "direct[ed] the Chief Judge of the circuit court *** to appoint replacement members to the Electoral Board pursuant to section 10-9 of the Election Code [citation]." The court further held: "If the decision of the newly constituted Electoral Board results in the need for a referendum, the referendum shall be placed on the ballot of the first election thereafter which meets all the

relevant statutory requirements of the Election Code." *Anderson*, 289 Ill. App. 3d at 834. The holding in *Anderson* was cited with approval by our supreme court in *Girot*, 212 Ill. 2d at 378.

¶ 104 In the case at bar, we similarly remand with directions, as we instruct below.

¶ 105 CONCLUSION

¶ 106 In sum, we conclude: (1) that the board had standing to file a brief as a nominal defendant; (2) that the three members of the board be replaced by public members for consideration of the referendum question since it is not "practicable" for them to rule on a question that is "in relation" to their own candidacy; and (3) that, even though consideration of the referendum question, the objectors' petition and the objections to the objectors' petition cannot be completed in time to place the question on the November 4, 2014, ballot, we may still consider the issue pursuant to the public interest exception to the mootness doctrine.

¶ 107 For the foregoing reasons, we vacate the September 17, 2014, decision of the electoral board and reverse the August 28, 2014, order and the October 7, 2014, order of the trial court. As the appellate court did in both *Anderson* and *Kaemmerer*, we remand for a hearing *de novo* before an electoral board composed of impartial members. We direct the chief judge of the circuit court of Cook County to appoint replacement members to the Franklin Park Electoral Board pursuant to section 10-9 of the Election Code. If the decision of the newly constituted Franklin Park Electoral Board results in the need for a referendum, the referendum shall be placed on the ballot of the first election thereafter which meets all the relevant statutory requirements of the Election Code. The chief judge and the newly constituted Franklin Park Electoral Board shall each act at the earliest practicable date to ensure a timely resolution of this issue.

¶ 108 Reversed and remanded with directions.